**KRONENBERGER ROSENFELD, LLP**
James D. Carlson (AZ 033259)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
jim@kr.law

**LEXANALYTICA, PC**
Perry J. Narancic, *pro hac vice forthcoming*
3000 El Camino Real
Bldg. 4, Suite 200
Palo Alto, CA  94306
Tel: 650-655-2800
pjn@lexanalytica.com

Attorneys for Plaintiff Whaleco Inc.

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| **Whaleco, Inc.,** a Delaware company,<br><br>Plaintiff,<br><br>v.<br><br>**TemuExpress.com,** a domain name, **TemuGivesBack.com**, a domain name, **Temuinternationality.com,** a domain name, **Temua.cc**, a domain name, **Temu688.com**, a domain name, Temufun.com, a domain name, **John Does 1-20,** unknown individuals,<br><br>Defendants. | Case No. 2:23-cv-01542-ROS<br><br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Whaleco Inc. ("Plaintiff" or "Whaleco"), for its complaint against the internet domain names in the caption above (collectively, the "Infringing Domain Names") and Does 1–20, alleges as follows:

## NATURE OF THE CASE

1.     This is an action for *in rem* claims against the Infringing Domain Names based on the Anti-cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. 1125(d) and for trademark infringement under the Lanham Act, 15 U.S.C. 1114. Does 1–6, who have no affiliation with Plaintiff, have registered and used internet domain names that incorporate the Temu® word mark and/or logo in the Infringing Domain Names and corresponding websites, in violation of the ACPA and the Lanham Act. The Infringing Domain Names all use Plaintiff's federally registered trademarks in a deliberate attempt to create the false impression that the Infringing Domain Names point to websites that sell TEMU-endorsed goods when, in fact, that is not the case.

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338(a).

3.     This Court has *in rem* jurisdiction over the Infringing Domain Names pursuant to 15 U.S.C. § 1125(d)(2)(A). Plaintiff, through due diligence, has not been able to find a person who would have been a defendant because the identity of the registrant of the Infringing Domain Name is concealed by a privacy service. 15 U.S.C. § 1125(d)(2)(A)(ii). Additionally, under 15 U.S.C. § 1125(d)(2)(C), the Infringing Domain Names are deemed to have their situs in this judicial district because GoDaddy.com, LLC ("GoDaddy")—the domain name registrar for the Infringing Domain Names—is located in this District.

4.     Pursuant to 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(aa), Plaintiff will give notice of the violation of its rights and of its intent to proceed *in rem* to the postal and e-mail addresses set forth in the WHOIS registration records for the Infringing Domain Names.

5.     Venue is proper in the United States District Court for the District of Arizona under 28 U.S.C. §§ 1391(b)(2) and 15 U.S.C. § 1125(d)(2) because the

1   property—the Infringing Domain Names—are located in this District, since
2   GoDaddy—the domain name registrar—is located in this District.

3       6.      Upon information and belief, joinder of the Infringing Domain Names
4   is proper under Fed. R. Civ. P. 20(a)(2) in that the *in rem* cybersquatting
5   trademarks and trademark infringement claims set forth herein appear to arise out
6   of the same series of transactions, and the same questions of law are common to
7   all of the Infringing Domain Names.

8                                    **PARTIES**

9       7.      Plaintiff Whaleco Inc. is a Delaware corporation that owns and
10  operates a popular ecommerce service through www.temu.com.

11      8.      Defendant Doe 1 is an individual or entity whose identify, name, and
12  address are presently unknown. Doe 1 is the registrant, creator, and/or operator
13  of the following Domain Name: <temuexpress.com>, with the domain registrar
14  Domains By Proxy, LLC.

15      9.      Defendant Doe 2 is an individual or entity whose identify, name, and
16  address are presently unknown. Doe 2 is the registrant, creator, and/or operator
17  of the following Domain Name: <temugivesback.com>, with the domain registrar
18  Domains By Proxy, LLC.

19      10.     Defendant Doe 3 is an individual or entity whose identify, name, and
20  address are presently unknown. Doe 3 is the registrant, creator, and/or operator
21  of the following Domain Name: <temuinternationality.com>, with the domain
22  registrar Domains By Proxy, LLC.

23      11.     Defendant Doe 4 is an individual or entity whose identify, name, and
24  address are presently unknown. Doe 4 is the registrant, creator, and/or operator
25  of the following Domain Name: <temua.cc>, with the domain registrar Domains
26  By Proxy, LLC.

27      12.     Defendant Doe 5 is an individual or entity whose identify, name, and
28  address are presently unknown. Doe 5 is the registrant, creator, and/or operator

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

of the following Domain Name: <temu688.com>, with the domain registrar Domains By Proxy, LLC.

13.    Defendant Doe 6 is an individual or entity whose identify, name, and address are presently unknown. Doe 6 is the registrant, creator, and/or operator of the following Domain Name: <temufun.com>, with the domain registrar Domains By Proxy, LLC.

14.    Does 7 through 20 are individuals or corporations of unknown residence and citizenship. Plaintiff does not know any of the Does identities or locations at this time, and has been unable to discover them through reasonable due diligence.

15.    The true names and capacities of the defendants named herein as DOES 1 through 20, whether individual, corporate, associate or otherwise, are unknown to Plaintiff, which therefore sues those defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges, that each of the defendants designated as a Doe defendant is an actual person or entity involved in the acquisition, ownership, or use of the Infringing Domain Names. Plaintiff is informed and believes, and thereon alleges, that each of the defendants designated as a Doe is legally responsible for the events herein after alleged, and legally caused injury and damages proximately thereby to Plaintiff as herein alleged. Plaintiff will seek leave to amend this Complaint when the true names and capacities of the Doe defendants have been ascertained.

16.    The Infringing Domain Names and Does 1–20 may be referred to hereinafter as the "Defendants."

## FACTS

**A.    Plaintiff's Use of the TEMU Marks**

17.    Whaleco owns and operates an ecommerce platform called TEMU at temu.com ("TEMU.COM" or the "Platform").

18.     The Platform has operated in the United States since September 1, 2022. Consumers in the United States can purchase goods on the Platform from third party sellers in many categories, including clothing, consumer goods, cosmetics, appliances, and electronics.

19.     TEMU.COM is a closed-loop online marketplace that connects consumers with sellers, manufacturers, and brands around the world. The Platform is committed to offering the most affordable quality products to enable consumers and sellers in an inclusive environment. To keep the Platform a safe and secure shopping environment for consumers, Plaintiff and its affiliates also provide trust and safety services to curate sellers, risk control services, and data security services to protect consumers' personal and payment information.

20.     Since TEMU.COM went live in September 2022, Plaintiff has used its unique logo and "TEMU" to identify its services.

21.     Plaintiff, through its affiliate Five Bells Limited, is the valid owner or exclusive licensee of the federal trademark registrations set forth below:

a.      Reg. No. 7,164,306, issued by the United States Patent and Trademark Office on September 12, 2023, for the word mark "TEMU" under class 35 for, among other things, "Provision of an online marketplace for buyers and sellers of goods and services" the certificate for which is attached hereto as **Exhibit A-1**.

b.      Reg. No. 7,145,476, issued by the United States Patent and Trademark Office on August 22, 2023 for the TEMU logo for, among other things, "Provision of an online marketplace for buyers and sellers of goods and services" the certificate for which is attached hereto as **Exhibit A-2**. The TEMU logo registered under Reg. No. 7,145,476 appears as follows:

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

Case No.

4

**COMPLAINT**



22.   Together, the TEMU word mark ("TEMU Word Mark") and the TEMU logo mark ("TEMU Logo Mark") are referred to collectively herein as the "TEMU Marks."

23.   Plaintiff has used the TEMU Marks continuously since September 2022 to identify the source and origin of its services, and its website at TEMU.COM. Reproduced below and attached hereto as **Exhibit B** is a screenshot of the homepage of TEMU.COM as of October 19, 2023.

24.   The TEMU logo appears in the upper left corner of the TEMU.COM website:

/ /

/ /

/ /

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

25.    The Platform has become extremely successful. It has become the number one shopping app in the US App Store. According to TechCrunch, "after becoming the number one shopping app in the US App Store back in September, [TEMU] took the crown of free US iPhone apps across all categories on November 12." Attached hereto as **Exhibit C** is a screenshot from techcrunch.com containing an article stating facts concerning TEMU's downloads. Attached hereto as **Exhibit D** is a screenshot from the Google Play Store showing that the TEMU app has been downloaded more than 100 million times, which is accurate. Today, Plaintiff processes millions of dollars of transactions every month from sales made in Arizona alone, and processes significantly more throughout the United States.

26.    Plaintiff spends millions of dollars in building and optimizing an online infrastructure for sellers, as well as curating sellers. These substantial efforts have included screening reputable sellers, so that the quality of the shopping experience for consumers is very high.

27.    Plaintiff also spends millions of dollars on marketing and developing its brand. Traffic to TEMU.COM is one of the most important assets of the Platform. The number of consumers using the Platform is a key factor in attracting more quality sellers, which in turn attracts more consumers. There is a mutually reinforcing circle of attracting more sellers, which attracts more consumers—a phenomenon sometimes referred to as a "network effect" i.e. the more people use a system, the more valuable it becomes for all.

28.    To this end, the company has a significant marketing budget, including working with key influencers, and advertising on social media. For

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

instance, Plaintiff pays content creators (e.g. YouTubers) to promote TEMU.COM, as "influencers." **Exhibit E**, attached hereto show Plaintiff's influence program.

### B.    The Infringing Domain Names

29.    The TEMUEXPRESS.COM ecommerce site, shown below, has been using the TEMU Marks, including an orange logo that is deceptively similar to that used by Plaintiff. Some goods sold on this site are available through the Platform, in which case the infringing domain is unfairly trading on the work already done by Plaintiff to identify and curate high quality products. In some cases, however, the infringing domain is being used to sell products that have not been endorsed by Plaintiff—in which case Plaintiff is at risk for being associated with low-quality products that it has not curated or endorsed.



Below is a close-up of the logo used by TEMUEXPRESS.COM showing use of the TEMU Word Mark:

//

//

//

//

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108



30. TEMUGIVESBACK.COM resolves to a page (reproduced below) that has been using the TEMU Marks, including an orange logo that is deceptively similar to that used by Plaintiff. This website purports to offer TEMU "rewards" by enticing users to provide information about themselves, including their email addresses, in exchange for "rewards" that are, in fact, not provided.

31. The TEMUINTERNATIONALITY.COM ecommerce site, as shown below, uses the TEMU Logo Mark, including an orange square logo in the center of the page that is deceptively similar to that used by Plaintiff, as shown below. Some goods sold on this site are available through the Platform, in which case the infringing domain is unfairly trading on the work already done by Plaintiff to identify and curate high quality products. In some cases, however, the infringing domain is being used to sell products that have not been endorsed by Plaintiff—

1 in which case Plaintiff is at risk for being associated with low-quality products that

2 it has not curated or endorsed.



11     32.    The TEMUA.CC website, shown below, has been using the TEMU

12 Marks, including an orange logo that is deceptively similar to that used by

13 Plaintiff. TEMUA.CC sells goods that are not endorsed by Plaintiff. Note the use

14 of the TEMU Word Mark in the left corner:



22     33.    The TEMU688.COM website, shown below, has been using the

23 TEMU Marks, including an orange logo that is deceptively similar to that used by

24 Plaintiff. TEMUA.CC sells goods that are not endorsed by Plaintiff.

25 / /

26 / /

27 / /

28 / /

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108



34.    TEMUFUN.COM incorporates the TEMU Word Mark and sells goods that are not endorsed by Plaintiff. Note that the site misspells TEMUFUN in the left corner, as if trying to disguise use of the TEMU Word Mark in the domain name:

//

//

//

## COUNT I

### (Cybersquatting Against the Infringing Domain Names *In Rem*)
### [Lanham Act, 15 U.S.C. § 1125(d))]

35.   Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

36.   The registrants of the Infringing Domain Names have registered, trafficked in, and/or used domain names that are identical and confusingly similar to the TEMU Marks.

37.   The registrants of the Infringing Domain Names have a bad faith intent to profit from the TEMU Marks because the registrants have no legal right to use the Infringing Domain Names, which are being used to divert consumers from Plaintiff's legitimate website for the purpose of commercial gain.

38.   Under the ACPA, Plaintiff is entitled to an order requiring the domain name registrar, GoDaddy, or the .com registry, Verisign, Inc., to transfer the Infringing Domain Names to Plaintiff's registrar of choice.

39.   As a direct and proximate result of the wrongful conduct described in this Complaint, Plaintiff has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

40.   Plaintiff has been required to retain the services of an attorney to pursue its claims and is entitled to reasonable attorneys' fees and costs incurred in the prosecution of this action.

## COUNT II

### (Trademark Infringement)
### [Lanham Act, 15 U.S.C. § 1114]

41.   Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

42.   The use of the TEMU Marks by the Infringing Domain Names causes or is likely to cause confusion, mistake, and deception as to the affiliation,

Case No. _____

11

**COMPLAINT**

connection, and association of Defendants with Plaintiff, and/or as to the origin, sponsorship, and approval of Defendants' activities in connection with the TEMU Marks.

43. Defendants' use of the TEMU Marks causes or is likely to cause confusion, mistake, and deception as to the nature, characteristics, origin, and qualities of Defendants' activities in connection with the TEMU Marks.

44. Defendants' acts have caused and, unless restrained by this Court, will continue to cause Plaintiff and the public to suffer great and irreparable damage and injury through, among other things: (a) likelihood of confusion, mistake and deception among the relevant purchasing public and trade as to Defendants' identity, and (b) Plaintiff's loss of valuable goodwill in business reputation symbolized by the TEMU Marks.

45. Plaintiff is entitled to recover from Defendants the damages Plaintiff has sustained, and will sustain, as a result of Defendants' wrongful conduct as alleged herein. Plaintiff is further entitled to recover from Defendants the gains, profits, and advantages that they have obtained as a result of such wrongful conduct. Plaintiff at present is unable to ascertain the full extent of its damages, or the extent of the gains, profits, and advantages that Defendants have obtained by reason of the wrongful conduct described herein.

46. Plaintiff has no adequate remedy at law. Unless Defendants are preliminarily and permanently enjoined from committing the unlawful acts as set forth in this Complaint, including the unauthorized use of the TEMU Marks, Plaintiff will continue to suffer irreparable harm.

47. Plaintiff is entitled, pursuant to 15 U.S.C. § 1116, to an injunction restraining Defendants, their officers, agents, and employees and all persons acting in concert with them, from engaging in any further such acts of unfair competition and false designation of origin in violation of the Lanham Act.

/ /

## COUNT III

**(Unfair Competition and False Designation of Origin)**
**[Lanham Act, 15 U.S.C. § 1125(a)]**

48.     Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

49.     The use of the TEMU Marks by Defendants causes or is likely to cause confusion, mistake, and deception as to the affiliation, connection, and association of Defendants with Plaintiff, and/or as to the origin, sponsorship, and approval of Defendants' activities in connection with the TEMU Marks.

50.     Defendants' use of the TEMU Marks causes or is likely to cause confusion, mistake, and deception as to the nature, characteristics, origin, and qualities of Defendants' activities in connection with the TEMU Marks.

51.     Defendants' acts have caused and, unless restrained by this Court, will continue to cause Plaintiff and the public to suffer great and irreparable damage and injury through, among other things: (a) likelihood of confusion, mistake, and deception among the relevant purchasing public and trade as to Defendants' identity, and (b) Plaintiff's loss of valuable goodwill in business reputation symbolized by the TEMU Marks.

52.     Plaintiff is entitled to recover from Defendants the damages it has sustained, and will sustain, as a result of Defendants' wrongful conduct as alleged herein. Plaintiff is further entitled to recover from Defendants the gains, profits, and advantages that they have obtained as a result of such wrongful conduct. Plaintiff at present is unable to ascertain the full extent of its damages, or the extent of the gains, profits, and advantages that Defendants have obtained by reason of the wrongful conduct described herein.

53.     Plaintiff has no adequate remedy at law. Unless Defendants are preliminarily and permanently enjoined from committing the unlawful acts as set

1  forth in this Complaint, including the unauthorized use of the TEMU Marks, Plaintiff

2  will continue to suffer irreparable harm.

3      54.     Plaintiff is entitled, pursuant to 15 U.S.C. § 1116, to an injunction

4  restraining Defendants, their officers, agents and employees and all persons acting

5  in concert with them, from engaging in any further such acts of unfair competition

6  and false designation of origin in violation of the Lanham Act.

7                                **JURY DEMAND**

8      Plaintiff demands a jury trial on all claims so triable.

9                            **PRAYER FOR RELIEF**

10  WHEREFORE, Plaintiff prays for relief as follows:

11      A.     A judgment in favor of Plaintiff on all of the claims for relief pleaded

12  herein;

13      B.     An order requiring Verisign, Inc. and/or GoDaddy.com LLC to place

14  the Infringing Domain Names on hold and lock them for the pendency of this

15  litigation;

16      C.     An order requiring Verisign, Inc. and/or GoDaddy.com LLC to

17  disable the name server information for the Infringing Domain Names so that

18  they are no longer accessible to internet users for the pendency of this litigation;

19      D.     An order requiring, upon a finding on the merits, the current domain

20  name registrar for the Infringing Domain Names to change the registrar of record

21  for the Infringing Domain Names from the current domain name registrar to

22  Plaintiff's registrar of choice;

23      E.     An order that Defendants, and their officers, employees, agents,

24  servants, attorneys, and representatives, and all other persons, firms, or

25  corporations in active concert or participation with them, be preliminarily and

26  thereafter permanently enjoined and restrained, pursuant to the Court's inherent

27  equitable jurisdiction and pursuant to 15 U.S.C. § 1116, from:

28

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

(1) operating any website, or using any domain names, that use the TEMU Marks;

(2) engaging in any act of federal, state, or common law trademark infringement or unfair competition that would damage or injure Plaintiff; and

(3) encouraging, participating in or assisting in any of the above activities;

F.     An order that the Defendants be required to account for and pay to Plaintiff all gains, profits, and advantages derived from their acts of infringement and other unlawful conduct, as alleged herein;

G.     That judgment be entered against Defendants for Plaintiff's actual damages as a result of Defendants' act of infringement and other unlawful conduct alleged herein.

H.     An order that Plaintiff be awarded maximum statutory damages for violations of the Anti-Cybersquatting provisions of the Lanham Act in an amount not less than $100,000 for each of the Infringing Domain Names;

I.     That Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendants; and

J.     That Plaintiff be granted such other and further relief as the court deems just and proper.

Respectfully Submitted,

DATED: October 27, 2023                    **KRONENBERGER ROSENFELD, LLP**


By:     s/ James D. Carlson
        James D. Carlson

Attorneys for Plaintiff Whaleco Inc.

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

# Exhibit A-1

# United States of America

## United States Patent and Trademark Office

# temu

**Reg. No. 7,164,306**

**Registered Sep. 12, 2023**

**Int. Cl.: 35**

**Service Mark**

**Principal Register**

Five Bells Limited  (VIRGIN ISLANDS, BRITISH limited company (ltd.) )
6 Raffles Quay, #14-06
Singapore, SINGAPORE 048580

CLASS 35: Provision of an online marketplace for buyers and sellers of goods and services

FIRST USE 9-1-2022; IN COMMERCE 9-1-2022

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 97-975,695, FILED 08-10-2022

*Katherine Kelly Vidal*

Director of the United States
Patent and Trademark Office



---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten  Years***
**What and When to File:**

- *First Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  See 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and  an  Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:**  The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.  See 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the  World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# Exhibit A-2

# United States of America
## United States Patent and Trademark Office



**Reg. No. 7,145,476**

**Registered Aug. 22, 2023**

**Int. Cl.: 35**

**Service Mark**

**Principal Register**

Five Bells Limited  (VIRGIN ISLANDS, BRITISH limited company (ltd.) )
6 RAFFLES QUAY, #14-06
SINGAPORE, SINGAPORE 048580

CLASS 35: Provision of an online marketplace for buyers and sellers of goods and services

FIRST USE 9-1-2022; IN COMMERCE 9-1-2022

The mark consists of the stylized word TEMU with a stylized dress on top of the letter T, a rocking horse above the letter E, a shoe above the letter M, and a bag above the letter U.

The wording TEMU has no meaning in a foreign language.

SER. NO. 97-575,680, FILED 09-01-2022

*Katherine Kelly Vidal*

Director of the United States
Patent and Trademark Office



---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten  Years\***
**What and When to File:**

- *First Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  See 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an  Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:**  The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.  See 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO.  Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the  World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# Exhibit B



# Exhibit C

Exhibit C





**Image Credits:** Temu

Temu, a shopping app operated by the parent firm of China's e-commerce giant Pinduoduo, has risen from obscurity in the last few months. After becoming the No. 1 shopping app in the U.S. App Store back in September, the marketplace took the crown of free U.S. iPhone apps across all categories on November 12 and has since held onto the top seat. It has also been the top free Android app in the U.S. for two weeks.

*Image Credits: Data.ai*

To date, Temu has seen a little more than 5 million installs in the U.S., according to app analytics firm Sensor Tower. The U.S. is the app's biggest market, representing



Pinduoduo's sister shopping a...

techcrunch.com/2022/11/22/pinduoduos-sister-shopping-app-temu-tops-us-app-store/

Join TechCrunch+

Login

Search 🔍

TechCrunch+

Startups

Venture

Security

Crypto

Apps

Events

Advertise

More

97% of its total of 5.2 million worldwide installs since it launched at the end of August, says Sensor Tower.

The rapid ascendence of Temu, which is pronounced "tee-moo." is perhaps not a big surprise given the generous subsidies it's throwing at users. It's a bazaar with a wide range of products priced at Wish's level. Temu is able to be so affordable thanks to the well-established supply chain that Pinduoduo has built over the last seven years in China, which tries to source from manufacturers and bring the goods directly to customers with reduced intermediary costs.

**Sponsored Content**

**Top Takeaways Shaping Business Software Buying in 2023 and Beyond**

2022 B2B Digital Buyers' Journey survey from SAP and Futurum Research underscores the importance of digital marketplaces and resources in enabling efficiency, productivity & agility across industries.

Sponsored by SAP



Indeed, the e-commerce firm writes on its website that "[As] a member of PDD Holdings, Temu works closely with its global network of suppliers and logistics partners to create and curate quality products for consumers to enjoy the conveniences and comforts of life."

Pinduoduo, founded by Google China's early employee Colin Huang, has managed to become a rival to Alibaba by offering cheap factory-to-consumer goods, but its other hook is gamification. Users are encouraged to play casual games in the app,



**Learn How Intentional Innovation Can Build Trust in Tech**

Sponsored by Salesforce



such as its viral fruit-growing game, and are also coaxed into sharing deals with friends in exchange for free products. The app even shows a little progress bar, adding a touch of excitement, to show how many more social shares are needed before one can redeem the gift.

Users can also join group deals with strangers to secure deep discounts on premium items like expensive skincare products and iPhones, hence the app's name Temu, which is roughly short for "team up, price down." Temu can't be making much money from its deeply subsidized products, so it's yet to see if it can continue to lock users in when the discounts start to scale back.



**TC Early Stage**

**Turn your idea into a viable business**

**Get the building blocks you need to realize your entrepreneurial potential at TC Early Stage**

Boston, MA - April 20

**Register Now**

### Amazon's latest challenger is China's online dollar store Pinduoduo



The race to bring China-made goods to Western consumers via online stores is heating up. Pinduoduo, the Chinese e-commerce giant known for offering hard-to-believe deals, has quickly gained momentum for its first international endeavor in the U.S. The company's overseas shopping app, called Temu, briefly claimed the



conga

Simplify your path to revenue

# Exhibit D

Exhibit D

TEMU Application Download page from Google Play Store



# Exhibit E



## Benefits for Temu Influencers



Free Products



Exclusive Coupons for
Your Audience



Participate in the
Latest Events