# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Whaleco Incorporated,<br><br>   Plaintiff,<br><br>v.<br><br>TemuExpress.com, et al.,<br><br>   Defendants. | No. CV-23-02243-PHX-MTL<br><br>**PRELIMINARY INJUNCTION** |

Having previously granted a temporary restraining order ("TRO") on November 3, 2023 and ordered the unknown registrants, owners or operators of <TemuExpress.com>, <TemuGivesBack.com>, <Temuinternationality.com>, <Temua.cc>, <Temu688.com>, <Temufun.com>, (collectively, these domains being the "Infringing Domain Names", and the registrants, owners or operators thereof being the "Defendants") to show cause why a preliminary injunction on the same terms should not issue (Doc. 13 as amended at Doc. 16), and with the matter fully briefed as to the requested preliminary injunction, the Court held a hearing on November 20, 2023. Plaintiff Whaleco Inc. appeared at the hearing. Defendants were given notice as permitted under the TRO but did not appear.

For good cause shown and based on all documents filed in this matter and all information and argument presented at hearing, the Court enters the following findings of fact and conclusions of law and grants the preliminary injunction on the terms that follow.

….

….

## FINDINGS OF FACT

1. Plaintiff owns and operates an ecommerce site at TEMU.COM.

2. Since September 2022, Plaintiff has consistently used the trademark TEMU to identify the source and origin of its services at TEMU.COM (the "Platform"), which has become very popular, with its mobile application having been downloaded over 100 million times.

3. At all relevant times, Plaintiff was, and is the owner or exclusive licensee of the federal trademark registrations at 7,164,306 for the word TEMU (for "Provision of an online marketplace for buyers and sellers of goods and services) and 7,145,476 for the TEMU logo (for "Provision of an online marketplace for buyers and sellers of goods and services"). Collectively, these are the "TEMU Marks".

4. Plaintiff spends millions of dollars in building and optimizing an online infrastructure for sellers. These substantial efforts have included screening reputable sellers, so that the quality of the shopping experience for consumers is very high. Plaintiff also spends millions of dollars on marketing and developing its brand. Traffic to TEMU.COM is one of the most important assets of the Platform. The number of consumers using the Platform is a key factor in attracting more quality sellers, which in turn attracts more consumers.

5. All the Infringing Domain Names (except <TemuGivesBack.com>) are ecommerce sites that have been using the TEMU Marks to sell goods online. Some goods sold on these sites are available through the Platform. In some cases, however, the Infringing Domain Names are being used to sell products that have not been endorsed by Plaintiff – in which case Plaintiff is at risk for being associated with low-quality products that have not been endorsed by Plaintiff.

6. The remaining Infringing Domain Name, <TemuGivesBack.com>, resolves to a page that has been using the TEMU Marks, including an orange logo that is deceptively similar to that used by Plaintiff. This website purports to offer TEMU "rewards" by enticing users to provide information about themselves, which are not endorsed or

approved by Plaintiff.

7. In each case, the domain name registrar for the Infringing Domain Names is GoDaddy.com, LLC, which is headquartered in this District.

8. For each Infringing Domain Name, Domains by Proxy, LLC is the "proxy" or privacy company used by the true registrants (or licensees) of the Infringing Domain Names to hide their names in the public whois database.

9. Plaintiff filed a complaint on October 27, 2023 alleging: (a) an in rem action for cybersquatting in violation of the Lanham Act, 15 U.S.C. § 1125(d), (b) an action for trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114, and (c) an action for unfair competition and false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a).

10. On October 31, 2023, Plaintiff filed motion for a temporary restraining order, and on November 3, 2023 the Court entered a Temporary Restraining Order (as amended at Doc. 16) requiring, among other things: (a) that Defendants cease infringing the TEMU Marks, (b) that GoDaddy.com, LLC disable the Infringing Domain Names, (c) that Domains By Proxy, LLC disclose to Plaintiff the identities of those persons who are the true registrants (or licensors) of the Infringing Domain Names, and, (d) that Defendants could be served through alternative service by communicating through the designated email addresses made available through Domains By Proxy, LLC.

11. GoDaddy.com, LLC complied with the TRO by timely disabling the Infringing Domain Names. However, based on the evidence produced at the preliminary injunction hearing, Domains By Proxy, LLC has not yet complied, and therefore Plaintiff has been unable to serve Defendants' by traditional means. Nonetheless, the Court finds Plaintiff complied with the alternate service set out in the TRO and that this method of service was reasonably calculated to effect service.

12. Despite valid service having been effected, and the fact that the Infringing Domain Names had been disabled for a significant period of time with no protest from the Defendants, no Defendant appeared at the preliminary injunction hearing.

**CONCLUSIONS OF LAW**

13. Plaintiff has shown a strong likelihood of prevailing on all three of its causes of action for cybersquatting, trademark infringement and unfair competition.

14. For cybersquatting, since the Infringing Domain Names each include the word "temu", and Defendants have taken steps to conceal their identity through using Domains By Proxy, LLC, and the Infringing Domain Names are used to divert consumers away from Plaintiff to purchase goods that are not endorsed by Plaintiff, Plaintiff has shown that the Defendants registered the Infringing Domain Names in bad faith. *See* 15 U.S.C. § 1125(d)(1)(B) (listing factors used to determine bad faith).

15. As to trademark infringement and unfair competition, Section 43 of the Lanham Act provides liability for trademark infringement if, without the consent of the trademark owner, a defendant uses "in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . ." 15 U.S.C. § 1125(a)(1). Thus, to prevail, a plaintiff must demonstrate that the public is likely to be deceived or confused by the similarity of the marks at issue. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780, 112 S. Ct. 2753, 120 L.Ed.2d 615 (1992). Notwithstanding whether the violation is identified as an infringement, unfair competition, or false designation of origin, the determinative factor is a likelihood of consumer confusion. *Id.* Plaintiff's evidence submitted herewith satisfies the requirements of 15 U.S.C. § 1125.

16. As to infringement of Plaintiff's registered trademarks, Plaintiff has proved a prima facie case of trademark infringement because: (1) the TEMU Marks are distinctive marks and are registered with the U.S. Patent and Trademark Office on the Principal Register, (2) Defendants are not licensed or authorized to use any of the TEMU Marks, and

1  (3) Defendants' use of the TEMU Marks is causing a likelihood of confusion as to the origin or sponsorship of Defendants' products with Plaintiff.

17. Plaintiff is entitled to a presumption of irreparable harm at the preliminary injunction stage under the Trademark Modernization Act of 2020. 15 U.S.C. § 1116(a); *see, e.g., Cisco Sys. v. Wuhan Wolon Commun. Tech. Co.*, No. 5:21-CV-04272-EJD, 2021 U.S. Dist. LEXIS 137845, *16-18, 2021 WL 4962661 (N.D. Cal. Jul. 23, 2021) (applying presumption, noting Ninth Circuit's earlier presumption in trademark case reinstituted by Trademark Modernization Act). Such presumption has historically been entitled to significant weight in this Circuit. *Brookfield Communs., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1066 (9th Cir. 1999) (reversing denial and instructing entry of preliminary injunction for domain using competitor's trademark, relying solely on presumption for purposes of irreparable injury).

18. The public interest also supports a preliminary injunction, including the public interest in avoiding fraud and consumer confusion, and protecting the public confidence in property rights. *See, e.g., SEC v. Bar Works Capital, LLC*, No. 17-CV-04396-EMC, 2017 U.S. Dist. LEXIS 170983, 2017 WL 4642311 (N.D. Cal. Oct. 16, 2017) (avoiding fraud and harm to public); *Bancroft Life & Cas. ICC, Ltd. v. Intercontinental Mgmt.*, 456 Fed. App'x. 184, 188-189 ("public has a strong interest in protecting property rights").

19. The balance of hardships also favors Plaintiff. The Defendants' registration and use of the Infringing Domain Names fail to serve any legitimate legal purpose. *AECOM Energy & Constr., Inc. v. Morrison Knudsen Corp.*, 748 Fed. App'x at 120 (no equities in allowing defendant to continue illegal activities). Additionally, a temporary restraining order and a preliminary injunction ordering the domain name registrar or registry to place the Infringing Domain Names on lock confers no hardship to the registrant. *See Stephens Media LLC v. Human Ingenuity Int'l Corp.*, No. 2:09-cv-00434-RLH-PAL, 2009 WL 10710106, at *4 (D. Nev. Mar. 27, 2009) (finding hardships weighed in plaintiff's favor given the risk that potential and existing customers will be confused by infringing domain

name). Conversely, the damages to Plaintiff's reputation, goodwill, and pecuniary interests are substantial, given that Plaintiff has expended substantial resources to develop the quality, reputation, and goodwill associated with the TEMU Marks.

20. The injunctive relief requested, including a disabling and locking the Infringing Domain Names, is the type of interim relief routinely granted in instances of cybersquatting.

21. Thus, the Court finds the *Winter* factors strongly support the granting of a preliminary injunction on the terms set forth below, and thus the Court in the exercise of its sound discretion grants a preliminary injunction to Plaintiff to subside until final entry of judgment in this case. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008).

22. The Court also finds it is appropriate, consistent with Fed. R. Civ. P. 4, and commensurate with due process, to continue its order for e-mail service as effective personal service. Fed. R. Civ. P. 4(f)(3); *Sport Lisboa e Benfica-Futebol, SAD v. Doe 1*, No. CV 18-2978-RSWL-E, 2018 U.S. Dist. LEXIS 142971, 2018 WL 4043182 (C.D. Cal. Aug. 21, 2018) (permitting electronic service).

23. Due to the strong likelihood of success and showing of the *Winter* factors by Plaintiff, and the minimal risk of harm to Defendants from the preliminary injunction, the Court exercises its discretion and carries forward the $1,000 bond ordered and posted pursuant to the TRO, finding this bond sufficient for purposes of the preliminary injunction. *Van de Kamp v. Tahoe Regional Plan Planning Agency*, 766 F.2d 1319, 1326 as amended 775 F.2d 998 (9th Cir. 1985) (a strong likelihood of success on the merits "tips in favor of a minimal bond or no bond at all"); *Color Me House, Inc. v. Discovery Communs., Inc.*, 2013 U.S. Dist. LEXIS 44234, at *27 (W.D. Wash. Mar. 27, 2013) ($1,000 bond in light of "strong likelihood of success on the merits" among other considerations). No further bond is required.

24. The Court has the power to include GoDaddy.com, LLC and Domains By Proxy, LLC within the scope of this preliminary injunction, and finds it appropriate to do

so on the terms set forth below. Fed. R. Civ. P. 65(d)(2)(C); *Dish Network, L.L.C. v. Dima Furniture, Inc.*, No. CV TDC-17-3817, 2019 WL 2498224, at *8-9 (D. Md. Jun. 17, 2019) (Rule 65(d)(2) permits injunction to include such nonparties). The Court finds that GoDaddy.com, LLC and Domains By Proxy, LLC have received actual service of this lawsuit and Plaintiff's request for a preliminary injunction. Specifically, Plaintiff served both by emailing the Temporary Restraining Order (Doc. 16) to their designated email for notice of court disputes (Doc. 20 at ¶ 4). Additionally, Plaintiff physically served Domains by Proxy, LLC's registered agent for service of process. (*Id.* at ¶ 5.)

**TERMS OF PRELIMINARY INJUNCTION**

A.  Defendants, their officers, agents, servants, employees, attorneys, and all those in active concert or participation with them, are temporarily restrained from infringing upon the TEMU Marks, or Plaintiff's rights therein, or using or exploiting such, by:

1.  Using the TEMU marks or any reproduction, counterfeit, copy, or colorable imitation of the TEMU Marks for and in connection with any goods, services, or their packaging;

2.  Engaging in any course of conduct likely to cause confusion, deception, or mistake, or to injure Plaintiff's business reputation, or to dilute the distinctive quality of the TEMU Marks;

3.  Engaging in acts that constitute trademark infringement, counterfeiting, dilution, false designation of origin, cybersquatting, or unfair competition under the laws of the United States and the State of Arizona and that would damage or injure Plaintiff's business reputation or damage or dilute the value of Plaintiff's trademarks;

4.  Using, linking, transferring, selling, exercising control over, or otherwise owning the Infringing Domain Names or any other domain name that incorporates, in whole or in part, any of the TEMU Marks, or any domain name that is used in connection with an infringing website or page;

          5.     Creating, operating, owning, overseeing, or otherwise exercising control over any infringing website, web page, or parked page, incorporating, including, or otherwise displaying the TEMU Marks, or any version of Plaintiff's name in promotional, advertising, or pay per click campaigns;

          6.     Effecting any assignment or transfer, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding any of the prohibitions set forth in this Order.

    B.     GoDaddy.com, LLC shall maintain the Infringing Domain Names under lock, and is hereby prohibited from transferring the Infringing Domain Names other than to Plaintiff or its designated representative or account.

    C.     To the extent not already disclosed, Domains By Proxy, LLC shall immediately disclose to Plaintiff the registrant contact information it has on file for the Infringing Domain Names.

    D.     For good cause shown, the Court previously authorized alternative personal service. (Doc. 16.) In accord with that Order, Plaintiff shall contact the ultimate licensee(s) of the Infringing Domain Names through the "Contact Domain Holder" contact page at GoDaddy.com to advise of this Order. Once the direct email address(es) of the ultimate licensee(s) is/are obtained, all papers in this case shall be served by email sent to that/those address(es) as well. Email service to the(se) email address(es) shall constitute personal service effective upon transmission. Until the direct email address(es) is/are obtained, Plaintiff shall also attempt to effect service upon the ultimate licensee(s) by e-mail service to "InfringingDomainName@domainsbyproxy.com." The Court finds said means reasonably calculated to effect service, provide actual notice to Defendant, and to comport with due process.

. . .

. . .

. . .

. . .

E. The bond previously posted by Plaintiff shall remain in place and continue as the bond for purposes of this preliminary injunction as well. No additional bond is required.

Dated this 21st day of November, 2023.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge