**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Whaleco Incorporated,<br><br>    Plaintiff,<br><br>v.<br><br>TemuExpress.com, et al.,<br><br>    Defendants. | No. CV-23-02243-PHX-MTL<br><br>**ORDER** |

  Plaintiff Whaleco Inc. owns and operates a popular e-commerce platform called TEMU. After learning of websites allegedly infringing upon its registered TEMU marks, Plaintiff filed this suit against the website domain names and the unknown individuals managing the websites. The Court then issued a temporary restraining order ("TRO") and preliminary injunction ("PI"). Plaintiff's Counsel served both upon then-third-parties GoDaddy.com, LLC ("GoDaddy") and Domains By Proxy, LLC ("DBP"). Shortly thereafter, Plaintiff filed its First Amended Complaint naming GoDaddy and DBP as defendants and bringing claims against them. (Doc. 26 ¶¶ 53-69.)

  GoDaddy and DBP now move to dismiss under Fed. R. Civ. P. 12(b)(6). (Doc. 40.) Additionally, Plaintiff, GoDaddy, and DBP request that the Court take judicial notice of certain exhibits. (Docs. 42, 49.) The parties agree that the Court may take judicial notice of most of the requested exhibits, and the Court will therefore take notice of those that are agreed-upon. (Doc. 48 at 7 n.1; Doc. 57 at 2.) But GoDaddy and DBP object to two exhibits proffered by Plaintiff: WhoIs registration records for the allegedly infringing domain

1  names and a public statement available on the ICANN website. (*See generally* Doc. 57.)
2  GoDaddy and DBP argue that Plaintiff offers these exhibits for the truth of the matter
3  asserted therein, which is inappropriate. (*See generally id.*) The Court need not rely on
4  either objected-to exhibit in this Order.
5        GoDaddy and DBP's Motion to Dismiss is fully briefed. (Docs. 40, 41, 48, 56.) The
6  Court held oral argument on April 1, 2024. For the reasons that follow, the Court will grant
7  the Motion.

**I.  FACTS**

      GoDaddy is a domain name registrar. (Doc. 26 ¶ 38.) Domain name registrars allow individuals to purchase and register domain names for websites. (*Id.*) When a domain name is purchased and registered, the purchaser is ordinarily identified as the "registrant" in a publicly accessible database called WhoIs. (*Id.*)

      Plaintiff alleges that DBP, an affiliate of GoDaddy, is a proxy service that allows purchasers to keep their identities private.[1] (*Id.* ¶ 39.) DBP does this, according to Plaintiff, by assuming ownership of the domain name, listing itself as the "registrant" in the WhoIs database, and then leasing the domain name back to the purchaser. (*Id.*)

      Defendants <TemuExpress.com>, <TemuGivesBack.com>, <Temua.cc>, <Temuinternationality.com>, <Temu688.com>, and <Temufun.com> (the "Domain Defendants") were registered by Defendants John Does 1-20 (the "Doe Defendants") through GoDaddy. (*Id.* ¶¶ 11-18.) The Doe Defendants used DBP's services to avoid disclosing their identities on the WhoIs database. (*Id.* ¶ 19.) Before these domains were deactivated, they materialized to websites purporting to be associated with TEMU. (*Id.* ¶¶ 32-37.)

      After learning about the allegedly infringing websites, Plaintiff notified GoDaddy and DBP of its concerns. (*Id.* ¶ 41; Doc. 48 at 7.) At that time, GoDaddy did not disable the domain names and DBP did not provide the contact information for the Doe Defendants. (Doc. 26 ¶ 42.) Plaintiff moved ahead, filing its initial Complaint (Doc. 1) and

---

[1] GoDaddy and DBP disagree that DBP is a proxy service. (Doc. 41 at 14; Doc. 56 at 6-7.) Resolution of that issue is not necessary to the Court's analysis.

Motion for Temporary Restraining Order and Order to Show Cause re: Preliminary Injunction (Doc. 8). Plaintiff's Counsel provided copies of the filings to GoDaddy and DBP on the same date, October 27, 2023. (Doc. 26 ¶ 42; *Id.* at 38.)

Shortly thereafter, the Court granted Plaintiff's Motion (Doc. 8) and issued the TRO. (Doc. 13, as amended at Doc. 16.) Plaintiff's Counsel sent a copy of the TRO to GoDaddy and DBP on November 3, 2023. (Doc. 26 ¶ 43; *Id.* at 42.) The TRO required DBP to "disclose to Plaintiff the identities and all contact information for those who registered the [allegedly infringing domain names] (including, but not limited to, name, physical and email addresses, and phone number(s)) and provide the same to Plaintiff within three (3) business days from the date of service of this Order." (Doc. 16 at 3.)

Plaintiff alleges that, on November 22, 2023, DBP informed Plaintiff's Counsel that DBP would not disclose the requested contact information. (Doc. 26 ¶ 44; *Id.* at 48-49.) A week later, Counsel responded and further demanded the contact information; he also provided a copy of the PI which again required DBP to disclose the contact information. (*Id.* at 47-48; Doc. 48 at 8; Doc. 25 at 8.) Ultimately, DBP disclosed the contact information on November 30, 2023, by hard copy. (Doc. 48 at 8 n.2.)

On December 4, 2023, prior to receiving the hard copy of the contact information, Plaintiff filed its First Amended Complaint (Doc. 26). (Doc. 48 at 8 n.2.) Therein, Plaintiff added claims against GoDaddy and DBP for violations of the Lanham Act. (Doc. 26 ¶¶ 53-69.) GoDaddy and DBP now move to dismiss the claims. (Doc. 40.)

II.     **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it contains "factual content that allows the court to draw the reasonable inference" that the moving party is liable. *Id.* At the pleading stage, the Court's duty is to accept all well-pleaded complaint allegations as true. *Id.* Facts should be viewed "in the light most favorable to the non-moving party." *Faulkner*

*v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013). "[D]ismissal . . . is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (internal marks omitted).

**III.    DISCUSSION**

Plaintiff alleges that GoDaddy and DBP are liable for trademark infringement under 15 U.S.C. § 1114 and unfair competition and false designation of origin under 15 U.S.C. § 1125(a). The elements of both claims are the same. *Lodestar Anstalt v. Bacardi & Co. Ltd.*, 31 F.4th 1228, 1245 (9th Cir. 2022); *see also Brookfield Commc'ns, Inc. v. West Coast Ent. Grp.*, 174 F.3d 1036, 1067 n.8 (9th Cir. 1999). In either case, a plaintiff must prove that they have ownership of a valid mark and that the defendant's distribution of the infringing content "is likely to cause confusion, or to cause mistake, or to deceive." *Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 935 (9th Cir. 2015) (quoting *Fortune Dynamic, Inc v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1030 (9th Cir. 2010)).

Plaintiff does not allege that GoDaddy or DBP directly infringed its marks. (*See* Doc. 48 at 9.) Instead, Plaintiff argues that "DBP has assumed liability for [the Doe Defendants'] direct infringement." (*Id.*) Alternatively, they contend that GoDaddy and DBP "are contributorily liable for the acts of the Doe Defendants." (*Id.* at 15.) Even assuming, without deciding, that Plaintiff has alleged direct infringement against the Doe Defendants, the Court finds that Plaintiff's claims against GoDaddy and DBP fail.

**A.    Assumption of Liability[2]**

The Internet Corporation for Assigned Names and Numbers ("ICANN") "is a

---

[2] Plaintiff refers to DBP as being "vicariously liable" under the Internet Corporation for Assigned Names and Numbers' Registration Accreditation Agreement and GoDaddy's Domain Name Registration Agreement. (Doc. 48 at 10-13.) GoDaddy and DBP interpret this as Plaintiff's attempt to raise an unpled claim. (Doc. 56 at 3.) The Court does not. Instead of arguing that DBP has committed vicarious infringement, a separate and independent legal claim, the Court interprets Plaintiff as arguing that DBP has assumed liability for the alleged infringer's actions pursuant to Section 3.7.7.3 of the Registration Accreditation Agreement. That argument is consistent with the Amended Complaint. (Doc. 26 ¶¶ 40-41, 57, 65.)

private, non-profit corporation that administers the registration of internet domain names." *Balsam v. Tucows Inc.*, 627 F.3d 1158, 1159 (9th Cir. 2010). GoDaddy is accredited by ICANN to sell domain name registrations. (Doc. 26 ¶ 18.) To receive accreditation, GoDaddy was required to agree to ICANN's Registration Accreditation Agreement ("RAA"), which, as described by Plaintiff, "regulates domain name registrars and privacy/proxy services." (*Id.* ¶ 40.)

The RAA requires GoDaddy to enter into a registration agreement, which must include certain provisions, with each purchaser of a domain name registration. *Facebook Inc. v. Namecheap Inc.*, No. CV-20-00470-PHX-GMS, 2020 WL 6585534, at *1 (D. Ariz. Nov. 10, 2020). One of those provisions is Section 3.7.7.3. *Id.* That section states:

> Any Registered Name Holder that intends to license use of a domain name to a third party is nonetheless the Registered Name Holder of record and is responsible for providing its own full contact information and for providing and updating accurate technical and administrative contact information adequate to facilitate timely resolution of any problems that arise in connection with the Registered Name. **A Registered Name Holder licensing use of a Registered Name according to this provision shall accept liability for harm caused by wrongful use of the Registered Name, unless it discloses the current contact information provided by the licensee and the identity of the licensee within seven (7) days to a party providing the Registered Name Holder reasonable evidence of actionable harm.**

(Doc. 42-4 at 15-16 (emphasis added).) The bolded language is included in GoDaddy's Domain Name Registration Agreement ("DNRA"). (Doc. 42-2 at 7.)

Plaintiff alleges that Section 3.7.7.3 renders DBP, as the registered name holder, liable for the Doe Defendants' wrongdoing because it failed to disclose the current contact information of the Doe Defendants within seven days of receiving reasonable evidence of the actionable harm. (Doc. 26 ¶¶ 40-42, 45, 57, 65.) GoDaddy and DBP respond that Plaintiff is not a party to the RAA and has no standing to enforce its terms. (Doc. 41 at 12-13.)

Only ICANN and domain name registrars are parties to the RAA. (Doc. 42-4 at 3.) *See also Balsam*, 627 F.3d at 1160-61. Plaintiff is neither. Plaintiff argues that it may

nonetheless enforce the RAA's terms as a third-party beneficiary. (Doc. 48 at 13-14.) But the Ninth Circuit has specifically rejected this argument. In *Balsam*, the court held that because Section 3.7.7.3 merely "sets out a contractual provision that must be included in a *separate* agreement . . . . [It] does not create an independent binding obligation for the parties to the RAA." 627 F.3d at 1162 (emphasis in original). Therefore, Section 3.7.7.3 "cannot be reasonably construed to confer a right or benefit to any party, let alone a third party." *Id.*

Plaintiff cites two cases ostensibly supporting its reliance on the RAA, but those cases are distinguishable. (Doc. 48 at 13-14.) In *Facebook, Inc.*, this Court found that the plaintiffs plausibly alleged that they were third-party beneficiaries of defendants' registration agreement, which incorporated Section 3.7.7.3 of the RAA. 2020 WL 6585534, at *4. Importantly, the plaintiffs "did not argue that they were trying to enforce the RAA itself, but the RAA as incorporated in the registration agreement." *Id.* The same was true in *Meta Platforms, Inc. v. New Ventures Services Corp.*, No. 3:21-697, 2023 WL 5651994, at *6 (M.D. Pa. Aug. 31, 2023). Plaintiffs here, by contrast, specifically allege that GoDaddy and DBP violated the RAA, not the DNRA. (Doc. 26 ¶¶ 40-42, 45, 57, 65.) While Plaintiff's briefing appears to alternatively allege that DBP violated the DNRA, the allegations in Plaintiff's Amended Complaint control. *See Gagic v. Cnty. of Maricopa*, No. CV-21-00037-PHX-MTL, 2021 WL 1264006, at *3 n.4 (D. Ariz. Apr. 5, 2021). And *Balsam* specifically foreclosed the theory of liability set forth therein.

But even if Plaintiff amended its claims to ground them in the DNRA, they would still fail. Unlike the registration agreement at issue in *Facebook, Inc.*, the DNRA contains a no third-party beneficiary clause. (Doc. 42-2 at 7.) It states that, "[u]nless otherwise specified, nothing in this [a]greement shall be deemed to confer any third-party rights or benefits." (*Id.* at 2.) Section 5 of the DNRA, which incorporates Section 3.7.7.3 of the RAA, does not otherwise specify. (*See id.* at 7.) The DNRA clearly identifies third-party beneficiaries where they are intended. (*See id.* at 2-4, 18-19.) Section 5 makes no similar identification. (*See id.* at 7.) Thus, reading Section 5 in the context of the entire DNRA, as

the Court must, the Court finds that it does not convey any rights upon third parties. *Terrell v. Torres*, 248 Ariz. 47, 50 (2020).

## B.  Contributory Trademark Infringement

Plaintiff alternatively argues that GoDaddy and DBP are liable for the Doe Defendants' trademark infringement as contributors. (*Id.* ¶¶ 58, 66.) "To be liable for contributory trademark infringement, a defendant must have (1) intentionally induced the primary infringer to infringe, or (2) continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied." *Perfect 10, Inc. v. Visa Intern. Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007) (internal marks omitted).

Plaintiff alleges that the second prong applies to GoDaddy and DBP. (Doc. 26 ¶¶ 40-45, 58, 66.) Instead of supplying an "infringing product," GoDaddy and DBP supply a service. In such a case, in addition to evaluating the defendant's knowledge, "the court must [also] 'consider the extent of control exercised by the defendant over the third party's means of infringement.'" *Perfect 10, Inc.,* 494 F.3d at 807 (quoting *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 984 (9th Cir. 1999)); *see also Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 591 F. Supp. 2d 1098, 1111 (N.D. Cal. 2008). "For liability to attach, there must be '[d]irect control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark.'" *Perfect 10, Inc.,* 494 F.3d at 807 (quoting *Lockheed Martin Corp.*, 194 F.3d at 984) (alteration in original)).

First, Plaintiff's claim against DBP fails because Plaintiff does not allege that DBP exercised any control over the Doe Defendants' means of infringement. (*See generally* Doc. 26.) *See Perfect 10, Inc.,* 494 F.3d at 807 ("[Plaintiff] has not alleged that Defendants have the power to remove the infringing material from these websites or directly stop their distribution over the Internet."). At most, Plaintiff insinuates that GoDaddy's ability to disable the allegedly infringing domain names should be attributed to DBP. (*See* Doc. 26 ¶¶ 58, 66.) But that argument is unavailing because, as discussed below, Plaintiff does not allege that GoDaddy exercised sufficient control to make a claim, either. (*Supra* at 8-9.)

1   But even if it had, Plaintiff has not alleged alter ego liability and cannot attribute GoDaddy's capabilities to DBP. (*Supra* at 9-10.)

Plaintiff, relying on *Solid Host, NL v. Namecheap, Inc.*, 652 F. Supp. 2d 1092 (C.D. Cal. 2009), argues that DBP's ability to disclose the Doe Defendants' identities establishes that DBP had control over the Doe Defendants' means of infringement. (Doc. 48 at 19-20.) But reliance on *Solid Host* is dubious, as there, the court considered allegations of contributory cybersquatting, a claim ultimately rejected as nonexistent by the Ninth Circuit. *Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 737 F.3d 546, 551-554. (9th Cir. 2013) Regardless, *Solid Host* does not support Plaintiff's position. In that case, the court found that the defendant's "anonymity service was central to [the infringers'] cybersquatting scheme" and that the defendant controlled the means of infringement. 652 F. Supp. 2d at 1115. But importantly, the defendant in *Solid Host* did not just provide an anonymity service—it was also a domain name registrar. *Id.* The court further observed that "[i]f [the defendant] had returned the domain name to [the plaintiff], the [infringers'] activity would have ceased." *Id.* DBP, again, is not alleged to have independently had the ability to deactivate or return the allegedly infringing domain names.

Plaintiff's claim against GoDaddy fares no better. First, the Ninth Circuit has held that domain name registrars, while acting as such, do not exercise the requisite level of control over purportedly infringing domain names to sustain a claim for contributory infringement. *Lockheed Martin Corp.*, 194 F.3d at 984-85. Second, GoDaddy was not, as Plaintiff's contend, required to disable the domain names after receiving Plaintiff's allegations. "The mere assertion by a trademark owner that a domain name infringes its mark is not sufficient to impute knowledge of infringement . . ." *Lockheed Martin Corp. v. Network Sols., Inc.*, 985 F. Supp. 949, 963 (C.D. Cal. 1997); *see also Petroliam Nasional Berhad*, 737 F.3d at 548 n.1 (stating that ICANN's Uniform Domain Name Dispute Resolution Policy "provides that registrars need only intervene in a cybersquatting dispute upon order of a court or an arbitration decision"). True, GoDaddy ultimately received this Court's TRO and PI, which imparted greater knowledge than mere allegations. (Doc. 26 at

42, 47-50.) But GoDaddy disabled the domain names upon receiving the TRO. (*See id.* at 44.) Thus, Plaintiff has not alleged that GoDaddy continued to supply the Doe Defendants with the instrument of their alleged infringement after receiving knowledge of that alleged infringement.

### C. Statutory Immunity

Plaintiff's claims against GoDaddy fail for the additional and independent reason that GoDaddy has statutory immunity as a domain registrar pursuant to 15 U.S.C. § 1114(2)(D)(iii). That section states, "[a] domain name registrar . . . shall not be liable for damages under this section for the registration or maintenance of a domain name for another absent a showing of bad faith intent to profit from such registration or maintenance of the domain name." *Id.* This conditional immunity also applies to claims brought pursuant to 15 U.S.C. § 1125(a). *See Petroliam Nasional Berhad*, 737 F.3d at 551.

The Ninth Circuit, in the context of claimed violations of the Anticybersquatting Consumer Protection Act, has stated that a domain registrar does not evidence a bad faith intent to profit when "its activities do not extend beyond registration." *Rigsby v. GoDaddy Inc.*, 59 F.4th 998, 1006. In *Rigsby*, the court rejected the plaintiff's claim because he had "not plausibly alleged that [the domain name registrar] used, or trafficked in his domain name with a bad faith intent to profit, nor has he plausibly alleged that [the domain name registrar's] allegedly wrongful conduct surpassed mere registration activity." *Id.*

GoDaddy's allegedly wrongful conduct is that it failed to disable the purportedly infringing domain names when Plaintiff first contacted them. (Doc. 26 ¶¶ 41-42, 57-58, 65-66.) Plaintiff does not allege that GoDaddy intended to profit from the registration or maintenance of the domain names in any way. (*See generally* Doc. 26.) Nor do they allege that GoDaddy engaged in activities beyond registration. (*See generally id.*) Thus, GoDaddy is entitled to statutory immunity.

### D. Alter Ego Liability

Finally, Plaintiff argues that the Court should consider GoDaddy and DBP's actions together because they are alter egos of one another. (Doc. 48 at 22-24.) To allege alter ego

liability, Plaintiff must assert "(1) that there is such unity of interest and ownership that the separate personalities of [GoDaddy and DBP] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Am. Tel. & Tel. Co. v. Compagnie Bruzelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996) (internal marks and citation omitted).

Plaintiff contends that it has alleged alter ego liability because "DBP is owned by GoDaddy," "GoDaddy appears to be processing and responding to trademark infringement complaints directed to DBP," and "the parties hold themselves out as 'affiliates'." (Doc. 48 at 23.) But this is insufficient. While Plaintiff "alleges several facts that indicate an overlap in" GoDaddy and DBP's operations, "[a]dditional allegations are needed . . . to give rise to the plausible inference that" the separate personalities of GoDaddy and DBP have ceased to exist. *Facebook, Inc.*, 2020 WL 6585534, at *6.

## IV. LEAVE TO AMEND

Plaintiff "seeks leave to amend." (Doc. 48 at 24.) District courts "shall grant leave to amend freely 'when justice so requires.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting Fed. R. Civ. P. 15 (a)). Courts in the Ninth Circuit are to apply this policy "with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). The Court, however, "may in its discretion deny leave to amend due to undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies . . . , undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of amendment." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009). Absent a "strong showing of any of [these] factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (emphasis in original).

The Court finds that amendment would be futile here. As discussed, Plaintiff's claims fail as a matter of law. Moreover, when given an opportunity to explain what Plaintiff would add if given an opportunity to amend, Plaintiff's Counsel said only that Plaintiff, in a Second Amended Complaint, would be clearer about the specific provisions

of the contracts that it is relying upon. That would be insufficient to save Plaintiff's claims. Accordingly, the Court will not grant Plaintiff leave to amend.

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants GoDaddy.com, LLC and Domains By Proxy, LLC's Notice of Motion and Motion to Dismiss Plaintiff Whaleco, Inc.'s First Amended Complaint (Doc. 40) is **granted**.

**IT IS FURTHER ORDERED** that Defendants GoDaddy.com, LLC and Domains By Proxy, LLC are **dismissed with prejudice**.

Dated this 1st day of April, 2024.

Michael T. Liburdi
United States District Judge